UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC STRICKHOLM<br><br>    Plaintiff,<br><br>  v.<br><br>THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY d/b/a GOOD SAMARITAN SOCIETY – IDAHO FALLS VILLAGE, a corporation,<br><br>    Defendants. | Case No. 4:11-CV-00059-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to compel arbitration and stay proceedings. The Court has reviewed the parties' submissions and finds that it would not be significantly aided by oral argument. For the reasons explained below, the Court will deny the motion.

## FACTUAL BACKGROUND

This is a medical negligence action brought by Eric Strickholm against Good Samaritan, a nursing home in Idaho Falls, Idaho. Eric Strickholm's mother, Alma Strickholm, was admitted into Good Samaritan on June 30, 2008, upon her release from the hospital where she had been treated for pneumonia.

Upon his mother's admission to Good Samaritan, Strickhom filled out all

necessary forms on her behalf, as he held both a Financial and a Medical or Health Care Power of Attorney on her behalf.  Among these forms was an agreement to arbitrate "[a]ny legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Admission Agreement, or the breach thereof, or, related to the care of stay at the Facility."  *Resolution of Legal Disputes,* Ex. A to Duke Aff., Dkt. 4-2.  The agreement further states that it "binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the resident."  *Id.*

While in the care of Good Samaritan, Alma suffered further health complications.  She was readmitted to the hospital in late July to address these complications, and she was released August 7, 2008.  Strickholm's mother died on August 25, 2008.  Strickholm maintains the complications resulting in his mother's death were caused by "the improper and negligent treatment provided by Good Samaritan."  *Compl.* ¶ 15, Dkt. 1-4.

On February 17, 2011, Strickholm filed a Complaint against Good Samaritan alleging a wrongful death claim arising from the care his mother received while at the Good Samaritan facility.  Good Samaritan now moves to compel arbitration, arguing that the arbitration agreement between Alma and Good Samaritan, which Strickholm signed as the "responsible party," applies to Strickholm's wrongful death claim.  Strickholm responds that the arbitration agreement does not apply to his wrongful death claim because (1) his wrongful

death claim belongs to him solely, and his mother had no right to waive his constitutional right to a jury trial; and (2) he did not sign the arbitration agreement in his personal capacity, and therefore he did not agree to arbitrate his wrongful death claim.

## ANALYSIS

Under both federal and Idaho law, there is a strong presumption in favor of arbitrability; however, if the parties did not agree to arbitrate they may not be forced to do so. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Mason v. State Farm Mut. Auto. Ins. Co.*, 177 P.3d 944, 947 (Idaho 2007).[1] Determining if the parties agreed to arbitrate is the first task of a court asked to compel arbitration. *Mason*, 177 P.3d at 948. Additionally, the presumption in favor of arbitration is not more important than the parties' intent. *Id.* at 948 (citing *Oil, Chemical & Atomic Workers Int'l Union v. EG& G Idaho, Inc.*, 769 P.2d 548, 551 (Idaho 1989)).

The parties do not dispute that the arbitration agreement binds Alma's estate for claims relating to the care, treatment, and services Alma received at Good Samaritan. But, as Strickholm correctly notes, the Idaho Supreme Court recently held that wrongful death claims are not derivative but rather independent actions belonging to a decedent's

---

[1] Good Samaritan cites to the Federal Arbitration Act as the governing law rather than Idaho's Uniform Arbitration Act. Traditionally, the FAA applies in all cases in which the underlying transaction affects interstate commerce. 9 U.S.C. § 2 (2003). This issue has not been briefed by the parties, and as noted by the Idaho Supreme Court, "the distinction between state and federal substantive arbitration law is largely a distinction without a difference…" *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 246 P.3d 961, 969 (Idaho 2010). For these reasons, the Court declines to resolve this question. In any event, "issues of substantive law concerning the formation and interpretation of a contract are matters of state law." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)

heirs. *Castorena v. General Elec.*, 238 P.3d 209, 218-19 (2010). Under Idaho law, a wrongful death action vests in the statutorily designated survivors at the moment of death. *Id.* Here, then, Strickholm's wrongful death claim is his solely, and it never belonged to his mother or her estate. *Id.* at 219. Therefore, Strickholm's mother had no right to waive Strickholm's personal right to a jury trial on the wrongful death claim because it did not arise until after her death.

Good Samaritan argues, however, that *Castorena* does not provide any assistance in resolving whether a decedent's arbitration agreement binds an heir to submit non-survivor claims to arbitration because *Castorena* only addressed the application of the statute of limitations to a wrongful death claim. Because *Castorena* does not address the exact issue raised here, Good Samaritan asserts that "the *Castorena* decision should not be considered as providing any ruling which determines whether plaintiff's wrongful death action is subject to the arbitration agreement." *Def's Reply Br.* at 4, Dkt. 6.

While Good Samaritan is technically correct, this argument is not particularly helpful. No Idaho court, to this Court's knowledge, "provides any ruling" on this precise issue. In such situations where the state's highest court has not decided an issue, the task of federal courts sitting in diversity is to predict how the state high court would resolve it. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). In making this assessment, this Court may extrapolate from other related state court decisions even if not exactly on point. Therefore, while *Castorena* does not directly speak to the question at issue here, its discussion of Idaho's wrongful death statute as an independent cause of

action is instructive on whether or not Alma had the power to waive her son's potential wrongful death claim.

In addition, the Court may "look[] to well-reasoned decisions from other jurisdictions" as a source for other persuasive authority. *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980). Other courts have held that nonsignatory heirs do not forfeit their wrongful death claims because of arbitration agreements such as the one at issue in this case. *See Fitzhugh v. Granada Healthcare and Rehabilitation Center, LLC*, 58 Cal.Rptr.3d 585, 588 (2007); *Woodall v. Avalon Care Center-Federal Way, LLC*, 321 P.3d 1252 (Wash. 2010).

In *Woodall*, the decedent signed a contract agreeing to arbitrate all claims arising from personal injury or medical care, including any claims brought by a spouse or an heir. 321 P.3d at 921. After the decedent died while in the care of the defendant nursing home, the decedent's son and personal representative sought to bring various survival claims on behalf of the estate. He also brought a wrongful death claim. The court found that the arbitration agreement applied to the survival claims under the ordinary contract principle of agency, i.e., a personal representative stands in the shoes of a decedent when bringing a survival action. In contrast, Washington considers a wrongful death claim a separate cause of action belonging to the surviving heir and not the estate. The court therefore found that the arbitration agreement did not apply to the wrongful death claim because a decedent cannot restrict his beneficiaries' right to a jury trial for a claim that does not belong to him. *Id.*

Similarly, in *Fitzhugh*, the plaintiff, the decedent's spouse, signed an arbitration agreement in his capacity as an agent for the decedent. 58 Cal.Rptr.3d at 588. The Court held that because there was no evidence that the plaintiff signed the agreement in his personal capacity, there was no basis to infer that he waived his personal right to a jury trial on the wrongful death claim. *Id.*

The Court finds the reasoning of both these cases persuasive. General principles of contract law mandate that one is only bound by an arbitration agreement to which he or she is a party, unless some exception applies. *Dan Weibold Ford v. Universal Computer*, 127 P.3d 138 (Idaho 2005); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). There are five recognized theories under which nonsignatory parties may be bound "1) incorporation by reference; 2) assumption; 3) agency, 4) veil-piercing/alter ego; and 5) estoppel. *Thomson-CSF*, 64 F.3d at 776. If any of the nonsignatory exceptions applied, Strickholm could be bound by the agreement. But Good Samaritan did not provide any argument to establish nonsignatory liability, and the Court sees no relevant exception.

The Court therefore concludes that Strickholm is not required to arbitrate his wrongful death claims against Good Samaritan despite the language in the arbitration agreement purporting to bind heirs of the resident. As noted above, under ordinary principles of contract law, heirs should not be bound by an arbitration agreement they did not sign in their personal capacity.

Good Samaritan seeks to save its attempt to compel arbitration by arguing that

Strickholm did sign the agreement in his personal capacity and attested to understanding its terms and conditions; therefore, he is bound by it. The Court disagrees. The arbitration agreement was made between the "Resident" and Good Samaritan. *Resolution of Legal Disputes*, Ex. A to Duke Aff., Dkt. 4-2. There is no doubt that Alma was the resident and not her son. And nothing in the agreement indicates that Strickholm is a signatory in his personal capacity.

To the contrary, there is strong evidence demonstrating Strickholm did not sign the agreement in his personal capacity. Strickholm signed as the "responsible party," which suggests that he was signing in his representative capacity and not in his personal capacity. *Serenic Software, Inc. v. Protean Technologies, Inc.* 2007 WL 1366547, *7 (D.Idaho April 26, 2007) (finding that a corporate office who signed an agreement for the corporation as the "President" only signed in his representative capacity). Moreover, in clarifying his role as the responsible party, Stickholm *did not* check the Relative box and *did* check the relevant Power of Attorney boxes when defining his relationship to the Resident. *Duke Affidavit Exh. A*, Dkt. 4-2. Signing under his Power of Attorney, the Plaintiff was literally signing as his mother; Eric Strickholm was not a signatory of the agreement.

Strickhom's circumstances are thus similar to those of an heir in *Goliger v. AMS Properties, Inc.*, 19 Cal.Rptr.3d 819, 821 (Cal.App. 2 Dist. 2004). There, the heir signed an arbitration agreement between a nursing home and her mother as the "responsible party." When the daughter attempted to bring a wrongful death claim, the court held that

the arbitration agreement did not bind her because she did not sign it in her personal capacity. *Id. See also Fitzhugh*, 58 Cal.Rptr.3d at 588. Like the nursing home in *Goliger*, Good Samaritan has not come forward with any evidence to suggest Strickholm signed the arbitration clause in his personal capacity.

Good Samaritan tries to argue in the negative: it maintains that because the agreement did not indicate that Strickhom signed the agreement solely on behalf of his mother, he must have signed in his personal capacity as well. *Def.'s Reply* at 6, Dkt. 6. Good Samaritan supports this by quoting the language of the agreement, "The Resident and those signing this Agreement, including the Responsible Party, certify that they have read and understand this Agreement." *Duke Aff. Exh. A*, Dkt. 4-2. The alleged inference is that having read the agreement, Strickholm should be held accountable for the terms and conditions it contains – that is, he must arbitrate his claim.

The Court finds this line of reasoning unpersuasive. Strickholm made clear that he signed the forms as his mother's Power of Attorney. Despite language in the agreement to suggest that the heirs were to be bound by the agreement, it does not necessarily follow that Strickholm, approaching the forms as his mother's Power of Attorney, was knowingly waiving his personal constitutional right to a jury trial. Additionally, Good Samaritan's attempt to distinguish Woodall is unconvincing. In *Woodall* no heir signed the agreement in any fashion and the court made note of such. While it is true that the plaintiff in *Woodall* never touched a pen to the agreement, legally speaking, Strickholm did not either.

Good Samaritan is unable to establish a basis for subjecting Strickholm to arbitration. Whether or not the terms of the agreement are broad enough to cover the claims of heirs, parties who did not agree to the terms of a contract are not bound by it. Moreover, as noted above, the wrongful death claim was personal to Eric Strickholm. Accordingly,, neither Alma Strickholm, nor any person acting with her Power of Attorney, could subject Eric to arbitration.

## ORDER

IT IS HEREBY ORDERED that the motion to compel arbitration and stay proceedings (docket no. 4) is DENIED.



DATED: June 24, 2011

B. Lynn Winmill
Chief Judge
United States District Court