UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC STRICKHOLM,<br><br>        Plaintiff,<br>   v.<br><br>THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY d/b/a GOOD SAMARITAN SOCIETY – IDAHO FALLS VILLAGE, a corporation,<br><br>        DefendantS. | Case No. 1:11-cv-00059-BLW<br><br>**AMENDED MEMORANDUM DECISION AND ORDER** |

Before the Court is one motion in limine filed by Plaintiff Eric Strickholm (Dkt. 27) and three motions in limine filed by Defendant The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society – Idaho Falls Village  (Dkts. 21, 34 & Dkt. 39). For the reasons set forth below, the Court will allow Good Samaritan's late-disclosed witnesses to testify, but Strickholm must be given an opportunity to depose them.  Good Samaritan's three motions in limine will be granted in part and denied in part as detailed below.

## ANALYSIS

### 1. Plaintiff's Motions in Limine

Plaintiff Eric Strickholm moves to exclude the testimony of defense witnesses, Michelle Neubauer, a CNA employed by Good Samaritan, Sue Campbell, an RN and the

acting Director of Nursing Services for Good Samaritan, and Tasha Campbell, a CNA and the current starting director and unit clerk at Good Samaritan.  Strickholm argues that the witnesses should be excluded because they were not disclosed until after the close of discovery – the witnesses were not identified until January 24, 2013 in Defendant's Second Supplemental Answers to Plaintiff's First Set of Interrogatories to Defendant.

     Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose the name, and if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

     Rule 37(c) further provides, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court on motion or after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

     Good Samaritan explains that Ms. Neubauer provided care to the decedent, Alma Strickholm, but her signature could only be found in two places in Good Samaritan's chart, and her signature was difficult to read.  In its Initial Disclosures, Good Samaritan generally disclosed that all employees who provided care to Mrs. Strickholm had

knowledge of the care provided, and it provided Strickholm with a copy of Mrs. Strickholm's chart. Good Samaritan, however, did not specifically list Ms. Neubauer given the inadvertent oversight of identifying her signature.

Based on these facts, the Court will allow Ms. Neubauer to testify but Strickholm will be given the opportunity to depose Ms. Neubauer if he chooses to do so. Strickholm had equal access to Mrs. Strickholm's chart and Ms. Neubauer's name. It does not appear that the omission of Ms. Neubauer 's name from the witness list was intentional. To ameliorate any potential prejudice to Strickholm, however, he must be given the opportunity to depose her before trial.

The Court will also allow Tasha Campbell to testify but with the same caveat – Strickholm must be given another opportunity to depose Ms. Campbell if he so elects Apparently the only deposition Strickholm elected to take was a 30(b)(6) Deposition of Good Samaritan that took place on January 21, 2013 – long after the close of discovery. Good Samaritan identified four individuals to address the issues identified in the Rule 30(b)(6) request, including Tasha Campbell. Their 30(b)(6) designation indicated "Ms. Campbell is a CNA at the facility who is currently acting as a staffing coordinator and unit clerk. She is prepared to testify regarding the medical records and the care provided to Alma Strickholm during her stay in June and July 2008, and specifically with regard to care provided by CNA's and records related to instructing CNAs what cares need to be provided." *Email sent to Plaintiff's counsel on January 21, 2013*, Ex. D to Duke Aff. Thus, Strickholm was given an opportunity to depose Ms. Campbell, although he was only notified the day of the deposition that she would be one of the four individuals made

available to testify.  Under these circumstances, the Court will allow Strickholm another opportunity to depose Ms. Campbell.

Good Samaritan says that they do not intend to call Sue Campbell, so her late disclosure is not at issue.

**2. Defendant's Motions in Limine**

**A. DHW Surveys, Citations, and Monitoring Lists**

Good Samaritan asks the Court for an order precluding Strickholm, his witnesses, and his attorney from offering any evidence, making any comment, or asking any question relating to (1) any Department of Health and Welfare surveys, complaint investigations or citations relating to Good Samaritan; and (2) any nursing home monitoring lists or websites.  Good Samaritan maintains that the documents are irrelevant to the extent they do not involve care actually provided to Ms. Strickholm, constitute impermissible character evidence, are prejudicial and contain inadmissible hearsay.  Good Samaritan also argues that they should be excluded because they were not disclosed in discovery.

Strickholm responds that he does not intend to introduce the surveys, citations, and monitoring lists and websites in his case in chief, but argues that he should not be absolutely precluded from using such documents for impeachment purposes.  Given that Strickholm does not introduce such documents in his case in chief, the Court agrees that ruling on their admissibility should be reserved for trial.  "[I]n some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a

whole." *Casares v. Bernal,* 790 F.Supp.2d 769, 775 (N.D.Ill.2011) (citation omitted). Given that the Court does not have copies of these documents and does not know in what context they may be introduced if they are introduced at all, the Court will better positioned during trial to evaluate the document's relevance or prejudicial effect.

If Strickholm does attempt to introduce the documents as exhibits at trial, he will have to lay an adequate foundation to establish that the documents fall within the business records exception to the hearsay rule. Fed.R.Evid. 803(6). "The records introduced can be records of an entity not a party to the proceedings, and the foundation for their receipt can be made by a witness who is not an employee of the preparer." *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 828 F.Supp. 1114, 1119 (S.D.N.Y. 1993) (citing *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir.1987)). But the "with knowledge" requirement of Rule 803(6) nonetheless dictates that "the court must be able to determine from some appropriate source – from the document itself, or from external evidence (either direct or circumstantial or both), or from some combination of these things—that the foundational element has been met." *Id.* (internal quotation marks omitted).

The Court also notes that Rule 703 allows an expert to rely on inadmissible facts or data in reaching an opinion or inference if the facts are of a type "reasonably relied on by experts in the particular field." Fed.R.Evid. 703; *United v. Gonzales,* 307 F.3d 906, 910 (9th Cir. 2002). But it does not allow the proponent of expert testimony to use the expert as a conduit for that party to introduce otherwise inadmissible facts or data – "unless the court determines that their probative value in assisting the jury to evaluate the

**MEMORANDUM DECISION AND ORDER** - 5

expert's opinion substantially outweighs their prejudicial effect." Fed.R.Evid. 703. *See also United States v. 0.59 Acres of Land*, 109 F.3d 1493 (9th Cir. 1997) (error to admit hearsay offered as the basis of an expert opinion, without a limiting instruction)

The Court also cautions that experts may not offer testimony beyond what they expressed in their reports or depositions or consider evidence not considered at the time they drafted or supplemented their reports or testified at their depositions.

### B.  Duplicative Wrongful Death Claims

Good Samaritan next seeks to exclude Counts 2 through 4 of Strickholm's Complaint, which Good Samaritan alleges contains duplicative wrongful death claims.

The Court will not exclude Strickholm's wrongful death claims because they are duplicative.  As Good Samaritan acknowledges, Strickholm asserts different theories for his wrongful death allegations.  Although there may be some overlap of facts and statutes, this does not necessarily make them redundant.  Rule 8(e)(2) of the Federal Rules of Civil Procedure provides that "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses."  Thus, Strickholm is allowed to assert multiple legal theories even if he is entitled to only one recovery for the same injury.  To counter any risk for a double recovery, the Court will instruct the jury that Strickholm is entitled to only one recovery resulting from the death of his mother and the special verdict form will only include one line for damages.  So for practical purposes Strickholm's multiple wrongful death claims will merge into one, but he will be allowed to present evidence on all legal theories.  And if justified by the evidence, the Court will instruct the jury on all theories.

With respect to Good Samaritan's argument that there is no private right of action under the Federal Nursing Home Reform Act or its regulations codified at 42 C.F.R. 483.25, the Court has already determined that the applicable standard of care cannot be lower than the standard of care imposed on nursing homes by federal and state law regulations. *Hayward v. Jack's Pharmacy Inc.*, 115 P.3d 713, 719 (Idaho 2005)("[I]t follows that the standard of care for a physician treating a patient in a nursing home would be governed by [the federal regulations]"). Therefore, to the extent Good Samaritan's request to exclude Strickholm's negligence per se contradicts the Court's prior ruling, it is denied.

The Court has an even more basic concern with Good Samaritan's motion: it is essentially a motion to dismiss or strike, not a motion in limine. A true motion in limine would seek a ruling in advance of trial on whether certain evidence would be admissible to prove Good Samaritan's wrongful death claims. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *Fort Hall Landowners Alliance, Inc. v. Bureau of Indian Affairs,* 2007 WL 2187256, *1 (D.Idaho July 16, 2007). "Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash,* 282 F.3d 962, 968 (7th Cir. 2002); *see also Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).

In light of their limited purpose, motions in limine should not be used to resolve whether certain claims should survive. Rather, parties should target their arguments to demonstrating why certain items or categories of evidence should (or should not) be

introduced at trial, and direct the trial judge to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence. *U.S. ex rel. El–Amin v. George Washington Univ.*, 533 F.Supp.2d 12, 19 (D.D.C.2008).

Here, however, Good Samaritan asks to exclude entire claims because they are duplicative or because no private right of action exists under the federal regulation; it does not seek to exclude evidence relating to those claims.  That is a motion to dismiss. The deadline for dispositive motions has passed. For this reason, in addition to the substantive analysis set forth above, the Court will deny this part of Good Samaritan's motion.

Any redundancies that may arise from the multiple wrongful death claims, or disputes regarding the applicable law, can be resolved or clarified through the jury instructions.

### C. Evidence Regarding Staffing and Training

Good Samaritan seeks to exclude any opinion testimony from Strickholm's experts regarding staffing and training at Good Samaritan because Strickholm failed to disclose any opinions relating to staffing and training.

As already noted, the parties' experts may not offer testimony beyond what they expressed in their reports or depositions or consider evidence not considered at the time they drafted or supplemented their reports or testified at their depositions.  Strickholm will therefore not be allowed to offer any opinions at trial regarding the training and supervision they received by Good Samaritan's management, unless those opinions are set forth in the expert's Rule 26 report.

If properly disclosed, the expert opinion testimony regarding staffing and training will not be precluded because insufficient evidence exists for this claim. A motion in limine is not a "vehicle for a party to ask the Court to weigh the sufficiency of the evidence." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F.Supp.2d 508, 532 (D.N.J.2008). At this juncture, the Court has no idea what the evidence on this claim will be. Therefore, the Court cannot possibly "exclude" the negligent supervision and training claim prior to trial.

### D. Medical Expert's Testimony Regarding the Development of Pressure Ulcers at Her Facility.

Dr. Inna Sheyner recently testified at her deposition that she has not had any resident develop a pressure ulcer at her skilled nursing facility during her twelve-year tenure. *See Duke Aff.*, Ex. E, pp. 92:24-93:22. Good Samaritan requests that this line of testimony be excluded as irrelevant, not timely disclosed, and unduly prejudicial.

The Court finds the testimony was timely disclosed. Good Samaritan elicited this testimony during its deposition of Dr. Sheyner when probing her experience. She did not offer a new opinion with this testimony – she simply related her own experience in response to a question.

The Court, however, will reserve ruling on this issue until trial. That said, this testimony may be relevant to provide a context to Dr. Sheyner's expert opinion and experience. Experts' experiences and observations in their own practice can certainly inform their opinions. And it is possible that any prejudice arising from this testimony

could be mitigated through a limiting instruction if the Court allows its admission. However, the Court will reserve ruling on this issue until trial.

### E.  Photographs of Alma Strickholm Not Previously Disclosed

Good Samaritan next argues that any photographs of Alma Strickholm or her injuries that were not produced during discovery should be excluded.  Strickholm responds that he does not intend to introduce photographs of Ms. Strickholm's injuries that were not previously disclosed.  Instead, he wants to use a photograph of Ms. Strickholm as an illustrative exhibit to show what she looked like. So long as Strickholm does not seek to offer countless photographs of Ms. Strickholm to show what she looked like, the Court will allow such a photograph to be used as an illustrative exhibit.

### F.  Monica Bott's Testimony Regarding Medical Causation

According to Good Samaritan, Monica Bott, who is a registered nurse, may only testify to the standard of care and not to the medical cause of Alma Strickholm's pressure ulcer and death.  The Court agrees.

In *Perry v. Magic Valley Regional Med. Center*, the hospital argued that trial court erroneously allowing the nursing expert to testify as to medical causation.  The Idaho Supreme Court found that the trial court did not abuse its discretion in allowing a nurse's expert testimony because the nursing expert "did not testify as to causation."  995 P.2d 816, 820 (Idaho 2000). While not expressly held by the Court, this language suggests a nurse should not be allowed to testify regarding medical causation.

In addition, other courts have found that nurses are not qualified to attest to causes of medical problems because it is outside their scope of practice. *See, e.g., Vaughn v.*

*Mississippi Baptist Medical Center*, 20 So.3d 645, 652 (Miss. 2009) ("This is in keeping with the majority rule that nursing experts cannot opine as to medical causation.")(collecting cases). The Court agrees with the analysis in these cases. Therefore, the nursing experts, or other experts without a medical degree, who testify in this case may not testify to causation.

### G. Designation of Deposition Testimony

If a party intends to use deposition testimony – except for purposes of using an admission by a party opponent or impeaching the prior inconsistent statement of a testifying witness – the party offering the deposition testimony must designate by page and line the testimony the party intends to offer 36 hours in advance, so that the other party shall have sufficient time to submit their objections (if any) to the use of the testimony and to provide counter-designations.

Strickholm accuses Good Samaritan of wanting "to be 'tipped off' if its corporate deposition is going to be used for impeachment purposes." *Pl's Resp. to Def's General Mot. in limine* at 5, Dkt. 38. Good Samaritan, however, specifically excluded use of depositions for impeachment purposes from its requested advanced designation requirement, so this should not be an issue.

### H. Remaining Motions in Limine

Good Samaritan also argues that evidence concerning the following topics should be excluded: (1) special damages; (2) offers of compromise; (3) insurance; (4) Good Samaritan's motions in limine; (5) the cost of litigation; (6) written curriculum vitae of any expert; (7) previous lawsuits; and (8) other lawsuits or claims against Good

Samaritan. Strickholm says he does not intend to offer any evidence regarding these topics. Therefore, evidence regarding these topics – from either party – shall be excluded.

### I.  Reference to the Number of Attorneys Representing the Parties and Where Those Attorneys Are From

The Court will prohibit any reference by the parties to the number of attorneys representing any other party and where those attorneys are from. During voir dire, the Court will identify the attorneys and their law firms to determine whether any prospective jurors have a conflict of interest that would impair their impartiality.

### J.  Requests to Jurors to Place Themselves in Plaintiff's Position

Good Samaritan asks that Strickholm's counsel refrain from asking the jurors to place themselves in the position of the plaintiffs. This is the so-called "golden rule" argument. "The 'Golden rule' argument is uniformly prohibited where it is used to inflame the jury and encourage an increased damage award." *Lopez v. Langer*, 761 P.2d 1225, 1230 (Idaho 1988). Thus, both parties should refrain from using the golden-rule argument to inflame the jury. Both sides, however, may appeal, in a moderate manner, to a jury's common sense by asking them to ascertain the reasonableness of either party's actions. *Id.*

### K. Exclusion of Witnesses

The Court will exclude all witnesses who are not parties to this action from the courtroom –  with the exception of expert witnesses.

**ORDER**

IT IS ORDERED THAT:

1. Plaintiff's Motion in Limine (Dkt. 27) is DENIED. The late-disclosed witnesses will be allowed to testify, but Plaintiff will be given an opportunity to depose them.

2. Defendant's Motions in Limine (Dkts. 21, 34 & Dkt. 39) are GRANTED in part and DENIED in part in accordance with this decision.

DATED: March 1, 2013

B. Lynn Winmill
Chief Judge
United States District Court